UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DUKE UNIVERSITY,

    PLAINTIFF,

V.

THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,

    DEFENDANTS.

CASE NO.: 1:25-cv-11233

**COMPLAINT**

Plaintiff, Duke University ("Duke" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships identified on Schedule A, attached hereto (collectively, "Defendants"), which at least use the online marketplace accounts identified on Schedule A (collectively, the "Defendant Internet Stores" or "Seller Aliases"), and for its Complaint hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1114 *et seq.*, 15 U.S.C. § 1125, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court also has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. This Court has personal jurisdiction over Defendants, in that Defendants conduct significant business in Illinois and in this Judicial District, and the acts and events giving rise to

1

this lawsuit, of which Defendants stand accused, were undertaken in Illinois and within this Judicial District.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since Defendants directly target consumers in the United States, including Illinois, through the fully interactive, commercial Internet stores operating under the Defendant Internet Stores identified on Schedule A. Defendants are committing tortious acts, engaging in interstate commerce, and have wrongfully caused substantial injury in the State of Illinois.

**JOINDER**

4. Joinder is proper pursuant to Federal Rule of Civil Procedure 20(a)(2) as Plaintiff's right to relief stems from the same series of transactions or occurrences, and questions of law and/or fact common to all defendants will arise in the action.

5. Plaintiff has filed, as **Exhibit 2** attached hereto, its Schedule A list of Seller Aliases including the defendant store names and online marketplace accounts found to be selling counterfeit products. However, the true identities of the defendants – i.e., the individuals and/or entities operating the Seller Aliases – are not yet known.

6. In Plaintiff's experience, a significant number of Seller Aliases included in Schedule A are operated by the same individual and/or entity. It is not until the third-party marketplaces produce the registration data for these stores that the Plaintiff discovers the identity or identities of the individuals and/or entities operating the online marketplace accounts under the Seller Aliases.

7. Given the similarities between the Defendant Internet Stores discussed *infra* and the likelihood that many, if not all, are operated by the same individual and/or entity, and for purposes of judicial efficiency, Plaintiff asserts that joinder of all defendants is proper at this stage as severing

the case would mean that multiple stores with the same operator would be adjudicated piecemeal and/or would need to be re-joined at a later date.

## INTRODUCTION

8. This action has been filed to combat the online trademark infringement and counterfeiting activity of Defendants, who trade upon Plaintiff's valuable trademarks by selling and/or offering for sale unauthorized, inauthentic, infringing, and counterfeit products in connection with Plaintiff's federally registered trademarks.

9. Plaintiff, Duke University, is the sole owner of several federally registered trademarks covering the activities of Duke University and the Blue Devils – true and correct copies of which are attached hereto as **Exhibit 1** (collectively referred to as the "Duke Trademarks" and "Trademark Registrations").

10. In an effort to illegally and deceptively profit from the Duke Trademarks, Defendants created numerous Defendant Internet Stores, intentionally designed in look, feeling, and suggestion, to give the impression to consumers that they are legitimate websites and merchants selling Duke Products manufactured or authorized by the Plaintiff, with Defendants' ultimate intention being to deceive unknowing consumers into purchasing products which are unauthorized and infringe upon the Duke Trademarks (hereinafter referred to as "Counterfeit Products").

11. Defendant Internet Stores share unique identifiers, such as design elements and similarities of unauthorized products offered for sale, establishing a logical relationship between the Defendants, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation.

3

12. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, tarnishment, loss of control over its creative content, and loss of exclusivity of its valuable trademarks as a result of Defendants' actions and is thus seeking injunctive and monetary relief.

## THE PLAINTIFF

13. Plaintiff is a non-profit organization with its primary campus located in Durham, North Carolina. Founded in 1924, Duke University is one of the leading private universities in the United States and is currently ranked 6th by *U.S. News & World Report*. With an annual undergraduate enrollment of over 6,500 students, Duke is recognized for its leadership in medicine, and marine biomedicine and technology research.

14. In addition to its contributions to research and academia, Duke places significant value on its role in collegiate athletics. As a member of the Atlantic Coast Conference (ACC), Duke fields teams in 27 NCAA Division I varsity sports under the "Blue Devils" name. The Blue Devils have won several national championships in men's basketball, lacrosse, and soccer, as well as in women's golf and tennis.

15. Duke owns the exclusive, worldwide, and perpetual rights to develop, manufacture, distribute, license, sell, promote and otherwise exploit goods and services of any kind and nature based upon or derived from the Duke Trademarks (hereinafter referred to as the "Duke Products"). Duke Products include, but are not limited to: clothing, decor, toys, stationery, jewelry, and accessories.

16. The Duke Trademarks are inherently distinctive, valid, subsisting, and in full force and effect. The Duke Trademarks have been used continuously and have never been abandoned. The Duke Trademarks qualify as famous marks and identify products as merchandise originating from

Duke. Several of the Duke Trademarks are incontestable pursuant to 15 U.S.C. § 1115(b). The Trademark Registrations constitute *prima facie* evidence of their validity and of Duke's exclusive right to use the Duke Trademarks pursuant to 15 U.S.C. § 1057(b).

17. Duke has invested significant time, energy, money, and resources into promoting the Duke Products in connection with the Duke Trademarks. Duke has been licensing and distributing merchandise in connection with the Duke Trademarks for several decades. As a result, the Duke Products are widely known, easily recognizable, and are exclusively associated by consumers with Duke as their official source. The recognition and goodwill associated with the Duke Products, the Duke Trademarks, and Duke University are of incalculable and inestimable value to the Plaintiff.

18. The Duke Products are manufactured to the highest quality standards, which is what consumers have come to expect when purchasing products that bear the Duke Trademarks. The recognition and goodwill associated with the Duke and Blue Devil brands are of incalculable and inestimable value to Plaintiff.

19. Duke University has made efforts to protect its interests in and to the Duke Trademarks. Duke and its licensees are the only businesses and/or individuals authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing or featuring the Duke Trademarks. Plaintiff has not licensed or authorized Defendants to use the Duke Trademarks and/or to sell the Duke Products.

**THE DEFENDANTS**

20. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including this Judicial District, through the operation of fully interactive commercial websites and online marketplace accounts operating under the Defendant

Internet Stores identified on Schedule A. Defendants target the United States, including Illinois, and have offered to sell and, on information and belief, have sold and continue to sell Counterfeit Products to consumers within the United States and this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

21. The success and widespread popularity of Duke resulted in significant counterfeiting. Plaintiff has identified numerous interactive ecommerce stores and marketplace listings, including the Defendant Internet Stores, which are offering for sale, selling, and importing Counterfeit Products to consumers throughout the United States. These Defendant Internet Stores are operated on platforms which include, but are not limited to, those operated by: Aliexpress.com ("AliExpress"); eBay, Inc. ("eBay"); Printerval.com ("Printerval"); WhaleCo, Inc. d/b/a Temu ("Temu"); and Walmart, Inc. ("Walmart") (collectively referred to herein as "Online Marketplaces").

22. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $350 billion in annual online sales.[1] According to an intellectual property rights seizures statistics report issued by Homeland Security and the U.S. Customs and Border Protection, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in the fiscal year 2020 was over $1.3 billion.[2] Internet websites and e-commerce stores like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.*

23. As addressed in the *New York Times* and by the U.S. Dept. of Homeland Security, and as reflected in the increase of federal lawsuits filed against sellers offering for sale and selling

---

[1] *See* "2020 Review of Notorious Markets for Counterfeiting and Piracy," OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Executive Office of the President. 85 FR 62006 (October 1, 2020).
[2] *See* "Intellectual Property Rights Fiscal Year 2020 Seizure Statistics," U.S. CUSTOMS AND BORDER PROTECTION. CBP Publication No. 1542-092 (September 21, 2021).

infringing and/or counterfeit products on the above mentioned digital Online Marketplaces, an astronomical number of counterfeit and infringing products are offered for sale and sold on these digital marketplaces at a rampant rate.[3]

24. Upon information and belief, Defendants facilitate sales by designing their Defendant Internet Stores to appear to unknowing consumers as authorized online retailers selling genuine Duke Products through the use of Duke Trademarks. The Defendant Internet Stores perpetuate an illusion of legitimacy and using indicia of authenticity and security that consumers have come to associate with authorized retailers.

25. Upon information and belief, Defendants also deceive unknowing consumers by using the Duke Trademarks without authorization within the content, text, and/or metatags of their websites, in order to attract and manipulate search engines into identifying the Defendants Internet Stores as legitimate websites for authentic Duke Products. These tactics are meant to, and are successful in, misdirecting consumers who are searching for genuine Duke Products.

26. Upon information and belief, Defendants operate in a collective and organized manner, often monitor trademark infringement litigation alert websites, are in continuous and active concert with one another, are in frequent communication with each other – utilizing online chat platforms and groups, and use these collective efforts in an attempt to avoid liability and intellectual property enforcement efforts.[4] Furthermore, there is a substantial evidentiary overlap in Defendants' behavior, conduct, and individual acts of infringement, thus constituting a collective enterprise.

---

[3] *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, N.Y. TIMES (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. *See also Combating Trafficking in Counterfeit and Pirated Goods*, U.S. DEPT. OF HOMELAND SECURITY (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/ files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.

[4] For this reason, Plaintiff is concurrently filing a Motion For Leave to File Certain Documents Under Seal and Temporarily Proceed Under A Pseudonym.

27. Defendants go to great lengths to conceal their identities often using fictitious names and addresses to register and operate their massive network. For example, many of Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete, contain randomly typed letters, or fail to include cities and other relevant information. Other Defendants use privacy services that conceal the owners' identity and contact information completely. These are some of the common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive infringing operation, and to avoid being shut down.

28. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores, including, but by no means limited to: (1) virtually identical layouts, even though different aliases were used to register the respective online marketplace accounts; (2) similarities of the Counterfeit Products, and indicia of being related to one another, suggesting that the illegal products were manufactured by and come from a common source and that Defendants are interrelated; and, (3) other notable common features such as same naming conventions, registration patterns, accepted payment methods, check-out methods, metadata, lack of contact information, identically or similarly priced items, and the use of the same text and images.

29. Further, illegal operators, like Defendants, typically operate multiple payment processor and merchant accounts, including but not limited to, one or more financial accounts operated through various payment platforms such as: PayPal, Inc. ("PayPal"); Payoneer, Inc. ("Payoneer"); Stripe, Inc. ("Stripe"); Alipay.com Co., Ltd. ("Alipay"); eBay Payments, Inc. ("eBay Payments"); and Walmart Payments ("Walmart Payments") (collectively referred to herein as "Payment Processors"), and hide behind layers of payment gateways so they can continue operation in spite of any enforcement efforts. Additionally, as financial transaction logs in previous similar cases

have shown, Defendants often maintain offshore bank accounts and regularly move funds from their Payment Processor accounts to said offshore bank accounts, outside the jurisdiction of this Court.

30. Defendants, without any authorization or license, have knowingly and willfully infringed the Duke Trademarks in connection with the manufacturing, advertisement, distribution, offering for sale, and sale of illegal, infringing, and counterfeit products into the United States and Illinois.

31. In committing these acts, Defendants have, willfully and in bad faith, committed the following, all of which have and will continue to cause irreparable harm to the Plaintiff: infringed upon and used counterfeit versions of the Duke Trademarks; created, manufactured, sold, and/or offered to sell Counterfeit Products which infringe upon the Duke Trademarks; used Duke Trademarks in an unauthorized manner in order to sell, advertise, describe, mislead, and deceive consumers; engaged in unfair competition; and unfairly and unjustly profited from such activities at the expense of the Plaintiff.

32. Plaintiff does not yet know the full extent and identity of the channels through which Defendants source and sell the Counterfeit Products. Defendants directed, supervised, and/or controlled activity infringing on Plaintiff's Trademarks and the sale of Counterfeit Products. Defendants have a direct financial interest in, and gain a direct financial benefit from infringing activity and realize profits from the sale of Counterfeit Products.

33. By engaging in the illegal conduct outlined herein, in addition to directly organizing and effectuating such infringing activities, Defendants also induced, caused, and materially contributed to infringing conduct by others, including the other Defendants. There is a causal relationship between the infringing activity and the financial benefit reaped by Defendants.

34. Unless enjoined, Defendants will continue to cause irreparable harm to Duke.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

35. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

36. Duke is the exclusive source and licensor of all official Duke Products based upon or derived from the Duke Trademarks.

37. Defendants have used the Duke Trademarks without authorization in commerce and/or offered Counterfeit Products featuring the federally registered Duke Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of Counterfeit Products.

38. Without the authorization or consent of the Plaintiff, and with knowledge of Plaintiff's well-known ownership rights in its Duke Trademarks, and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the Duke Trademarks and/or used spurious designations that are identical with, or substantially indistinguishable from, the Duke Trademarks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products.

39. Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Counterfeit Products to the purchasing public in direct competition with Duke and the Duke Products, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Duke Trademarks through their participation in such activities.

40. Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the Duke Trademarks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing,

10

importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public, and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by Duke University, through which Defendants make substantial profits and gains to which they are not entitled in law or equity.

41. Defendants' unauthorized use of the Duke Trademarks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Duke University, and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Duke Trademarks.

42. Defendants intentionally induce others to infringe upon Plaintiff's trademarks and/or continues to supply services with the knowledge that the recipient is using such services to engage in such trademark infringement. Defendants have the right and ability to supervise the infringing activity and have an obvious and direct financial interest in the counterfeit activity.

43. Defendants' actions constitute willful counterfeiting of the Duke Trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

44. Defendants' continued intentional use of the Duke Trademarks without the consent or authorization of Duke University, constitutes intentional infringement of the Duke Trademarks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

45. As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss, irreparable injury, and damage to the Plaintiff, its business, its reputation, and its valuable rights in and to the Duke Trademarks and the goodwill

associated therewith, in an amount as yet unknown. Duke has no adequate remedy at law for this injury, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss, and damage to Duke and its valuable Duke Trademarks.

46. Based on Defendants' actions as alleged herein, Duke is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as well as all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per-counterfeit mark per-type of goods sold, offered for sale, or distributed, and reasonable attorneys' fees and costs.

## COUNT II
## FALSE DESIGNATION OF ORIGIN, PASSING OFF, & UNFAIR COMPETITION
## (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

47. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

48. Plaintiff, as the owner of all right, title, and interest in and to the Duke Trademarks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

49. Plaintiff's Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register; the Duke Trademarks have been continuously used and have never been abandoned; the registrations for the Duke Trademarks are valid, subsisting, and in full force and effect; qualify as famous marks; and many are incontestable pursuant to 15 U.S.C. § 1065.

50. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and continues to create a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff.

51. By using the Duke Trademarks in connection with the sale of unauthorized products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized products.

52. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

53. Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, and intended to cause confusion, to cause mistake, and to deceive the purchasing public, with the intent to trade on the goodwill and reputation of Duke, its Duke Products, and Duke Trademarks.

54. As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Duke by depriving Plaintiff of sales of its Duke Products and by depriving Duke of the value of its Duke Trademarks as commercial assets in an amount as yet unknown.

55. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**COUNT III**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510, *et seq*.)**

56. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

57. Defendants have engaged in acts violating Illinois law, including, but not limited to, passing off their unauthorized products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of Defendants' goods, thus causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Duke Products, through Defendants' representation that Defendants' Counterfeit Products have Plaintiff's approval, when they do not.

58. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

59. The conduct of each Defendant is causing Plaintiff great and irreparable injury and, unless enjoined and restrained by this Court, Defendants will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured monetarily. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

60. Further, as a direct result of the Defendants' acts of trademark infringement, Defendants have obtained profits they would not have otherwise realized but for their infringement of Plaintiff's Trademarks.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the Duke Trademarks or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized Duke Product, or is not authorized by Plaintiff to be sold in connection with the Duke Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale using the Duke Trademarks;

    c. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the Duke Trademarks;

    d. further infringing the Duke Trademarks and damaging Plaintiff's goodwill;

    e. using, linking to, transferring, selling, exercising control over the Defendant Internet Stores, Defendants' product listings, or any other domain name or online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear the Duke Trademarks;

    f. operating and/or hosting websites at the Defendant Internet Stores, and any other online marketplaces or domain names registered to or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which bear the Duke Trademarks;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Online Marketplaces and Payment Processors,

and any related entities, web hosts for the Defendant Internet Stores, and domain name registrars, shall:

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiff which bear the Duke Trademarks, including, but not limited to, any accounts associated with Defendants listed on Schedule A;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff which bear the Duke Trademarks; and,

    c. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

3) That Defendants account for, and pay to, Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

4) For Judgment in favor of Plaintiff against Defendants that they have willfully infringed Plaintiff's rights in its federally registered Trademarks, pursuant to 15 U.S.C. § 1114;

5) That Plaintiff be awarded actual damages, statutory damages, and/or other available damages, at the election of Plaintiff; and that the amount of damages for infringement are increased by a sum not to exceed three times the amount thereof as provided by 15 U.S.C. § 1117;

6) For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered trademarks; and, b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

7) That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

8) Any and all other relief that this Court deems just and proper.

Dated: September 17, 2025　　　　　　Respectfully submitted,

*/s/ Gouthami V. Tufts*
Ann Marie Sullivan
Alison K. Carter
Gouthami V. Tufts
John J. Mariane

**SULLIVAN & CARTER, LLP**
111 W. Jackson Blvd. Ste 1700
Chicago, Illinois 60604
www.scip.law
929-724-7529
g.tufts@scip.law

***ATTORNEYS FOR PLAINTIFF***